UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY ETHERTON,

        Petitioner,

                                        CASE NO. 11-11958

v.                                        HONORABLE ARTHUR J. TARNOW

STEVEN RIVARD,

        Respondent.

_____/

## OPINION AND ORDER
## DENYING THE PETITION FOR WRIT OF HABEAS CORPUS
## BUT GRANTING IN PART A CERTIFICATE OF APPEALABILITY

Pending before the Court is petitioner Timothy Etherton's habeas corpus petition, which challenges his Ionia County conviction for possession with intent to deliver 50 to 449 grams of cocaine. Petitioner alleges that certain hearsay testimony deprived him of his right of confrontation, that the prosecutor elicited false testimony and made an improper closing argument, that the trial court's refusal to adjourn the trial was arbitrary and capricious, and that his trial and appellate attorneys were ineffective. Respondent Steven Rivard urges the Court to deny the petition on grounds that Petitioner's claims are procedurally defaulted and/or meritless. The Court has determined that the state courts' decisions on Petitioner's claims were objectively reasonable and, therefore, Petitioner is not entitled to habeas corpus relief. The specific reasons for this conclusion and a procedural history of the case follow.

*Etherton v. Rivard*, No. 11-11958

# I.  BACKGROUND

## A.  The Facts

Petitioner was charged with possession with intent to deliver at least 50, but less than 450, grams of cocaine.  He was tried before a jury in Ionia County Circuit Court on February 15, 2007.  Michigan State Trooper Trevin Antcliff testified that, on November 22, 2006, he and several other officers were conducting drug interdiction on the expressway in Ionia County.  About 3:30 p.m., he stopped a white Audi because the car was speeding and he had been advised to be on the lookout for two white males possibly carrying cocaine in a white Audi on a round trip between Grand Rapids and Detroit. Petitioner was driving the car, and he indicated that it was his car.

Based on the anonymous tip about two men in a white Audi possibly carrying cocaine, Trooper Antcliff asked Petitioner whether there was anything illegal in the car. Petitioner told him, "No," but when Trooper Antcliff asked Petitioner whether he could search the car, Petitioner said, "I don't know why you'd want to do that."  Trooper Antcliff responded by asking Petitioner if he was denying the trooper the right to do his job.  Petitioner replied, "If you want to search the car, go ahead."

A K-9 officer then responded to the scene and searched the vehicle, but did not find anything of significance.  Another officer, however, searched the vehicle and found approximately four ounces of cocaine.  Trooper Antcliff subsequently arrested Petitioner and his passenger (Ryan Pollie) for possession with intent to deliver cocaine.

2

*Etherton v. Rivard*, No. 11-11958

Newaygo County Deputy Sheriff Adam Mercer testified that he also participated in the traffic stop on I-96 on November 22, 2006.  He explained that the officers had received a tip about two white males traveling from Grand Rapids to Detroit in a white Audi about 10:00 a.m. that day to pick up drugs and returning to Grand Rapids the same afternoon.  Following the traffic stop, Deputy Mercer made contact with both the driver and the passenger in the vehicle.  And, after the police dog failed to make any positive hits, he (Mercer) conducted a search and found cocaine in the map compartment of the driver's door under an empty bag of potato chips.  The cocaine was in a clear plastic baggie.  It weighed 124.3 grams or approximately four and a half ounces, which, in his opinion, was a very large amount of cocaine.  The bag was testified for fingerprints, but no prints were found on the bag.

Keith Szyniszewski testified that he worked in the drug analysis unit of the Michigan State Police Forensic Science Division.  He analyzed the white powder in evidence and determined that it consisted of 125.2 grams of pure cocaine.

Sergeant Charlie Noll of the Ionia County Sheriff's Office interviewed Petitioner after advising him of his constitutional rights.  Petitioner told him that he had left Grand Rapids about 10:00 a.m. and had traveled to the Detroit area with Mr. Pollie as his passenger.  They went to see his former sister-in-law and nephew who were planning to visit Petitioner's parents in Virginia.  Once there, the relatives asked him to take them to the airport.  He did that and then returned to Grand Rapids, as he was unable to go to

3

*Etherton v. Rivard*, No. 11-11958

Virginia.  At no time did he and Mr. Pollie separate, and he did not know how the drugs got in his car.  He did not think that Mr. Pollie planted them there.

Ryan Pollie testified that he was charged with the same crime as Petitioner, but subsequently pleaded guilty to possession of less than twenty-five grams of cocaine.  He explained that he was serving a sentence of nine months in jail in return for his truthful testimony against Petitioner.  Pollie claimed that, on the day in question, he went to Detroit with Petitioner.  Their plan was to take some of Petitioner's relatives to the airport.  Petitioner dropped him off at a restaurant where he waited for thirty to forty-five minutes while Petitioner supposedly took his relatives to the airport.  On their subsequent ride home, Petitioner showed him a package of cocaine and told him that he got the cocaine from a man down the road from where Pollie had waited for him.  Petitioner had said that he could sell some of the cocaine and use the money to pay for the cocaine.  When they realized that they were being pulled over, Petitioner handed the cocaine to him and suggested that he put the cocaine in the glove compartment.  He refused to hide the cocaine and returned it to Petitioner who placed it either in his lap or in the door.

Detective Sergeant Joel Abendroth of the Michigan State Police testified that he was the supervisor of the officers who testified earlier in the trial.  He stated that the police had received a very specific tip from an anonymous caller on November 22, 2006. The tipster had said that two white males would be traveling along I-96 in a white Audi.

4

*Etherton v. Rivard*, No. 11-11958

The tip was specific as to the time when the men would be leaving Grand Rapids and the approximate time when they would be returning to Grand Rapids.

At the crime scene, Petitioner told him that he was going to Detroit to pick up his relatives and take them to the airport.  Petitioner also said that he had no idea how the drugs got in his car and that Mr. Pollie could not have put them there because they were together the entire time.

Sergeant Abendroth stated that the brick of cocaine in evidence was one hundred percent pure cocaine and, in his opinion, the purity and amount of cocaine suggested that it was not for personal use.  He thought it was worth at least $5,000.  He arranged to have the bag containing the cocaine tested for fingerprints, but no prints were found on the bag.  According to him, it is very uncommon to find fingerprints on bags, but they sent the bag for testing anyway to avoid having defense counsel question him about not testing the bag.

Petitioner did not testify or present any witnesses.  His defense was that the prosecution failed to prove that he knew the cocaine was in his car and that he intended to sell it.  He also maintained that the prosecution had bought the incriminating testimony of his co-defendant.

*Etherton v. Rivard*, No. 11-11958

**B.  The Verdict, Sentence, Motion for New Trial, Direct Appeal, and Collateral Proceedings**

The trial court instructed the  jury on the charged offense and on the lesser offense of possession of 50 to 449 grams of cocaine.  The jury found Petitioner guilty, as charged, of possession with intent to deliver at least 50, but less than 450, grams of cocaine. *See* Mich. Comp. Laws § 333.7401(2)(a)(iii).  On April 10, 2007, the trial court sentenced Petitioner as a fourth habitual offender to imprisonment for twenty to forty years.

Petitioner moved for a new trial on grounds that (1) the trial court erroneously denied his motion to adjourn the trial and (2) trial counsel was unprepared for trial because she did not know about a witness who could have testified in Petitioner's behalf. The trial court held an evidentiary hearing on Petitioner's motion and then denied the motion.

In a subsequent appeal of right, Petitioner argued that:  (1) the trial court abused its discretion by denying his request for an adjournment of the trial; (2) trial counsel was not prepared for trial and did not interview a material witness; (3) Dan Clayton's testimony at the evidentiary hearing was newly discovered evidence which entitled him to a new trial; (4) the trial court erred in denying his motion to suppress evidence; (5) the trial court improperly substituted its judgment for the jury's judgment when evaluating the newly discovered evidence; and (6) his sentence was improperly enhanced on the basis of factual findings not found by the jury beyond a reasonable doubt.   The Michigan Court

6

*Etherton v. Rivard*, No. 11-11958

of Appeals found no merit in these claims and affirmed Petitioner's conviction in an unpublished, *per curiam* opinion.  *See People v. Etherton*, No. 277459 (Mich. Ct. App. Oct. 16, 2008).  Petitioner raised the same claims in the Michigan Supreme Court, which denied leave to appeal because it was not persuaded to review the issues.  *See People v. Etherton*, 483 Mich. 896; 760 N.W.2d 472 (2009) (table).

On November 13, 2009, Petitioner filed a motion for relief from judgment in which he raised several issues about the prosecutor, trial counsel, and appellate counsel. These claims now form habeas claims one, two, three, four, six, and seven of the habeas corpus petition.  The trial court denied Petitioner's motion for relief from judgment after concluding that Petitioner had not demonstrated "good cause" under Michigan Court Rule 6.508(D)(3) for the failure to raise his claims on appeal, nor "actual prejudice" from the alleged irregularities supporting his claims for relief.

Petitioner appealed the trial court's decision, but the Michigan Court of Appeals denied leave to appeal for failure to establish entitlement to relief under Rule 6.508(D). *See People v. Etherton*, No. 295566 (Mich. Ct. App. Mar. 31, 2010).  On October 26, 2010, the Michigan Supreme Court denied leave to appeal for the same reason.  *See People v. Etherton*, 488 Mich. 911; 789 N.W.2d 478 (2010) (table).[1]

---

[1]  Supreme Court Justice Alton Thomas Davis recused himself because he sat on the Court of Appeals panel.

*Etherton v. Rivard*, No. 11-11958

**C.  The Habeas Petition and Responsive Pleading**

On May 4, 2011, Petitioner filed his habeas corpus petition through counsel.  He

argues that:

I.      Police testimony repeating what unnamed people told them
        linking Petitioner to drug dealing was unfairly prejudicial and
        a denial of the constitutional right of confrontation.

II.     The prosecutor in closing argument acted improperly by
        giving the jury his reasons for giving a plea bargain deal to
        the codefendant but not Petitioner Etherton, and for taking
        other actions, which was prejudicial and a denial of the
        constitutional right of confrontation.

III.    The prosecutor in closing argument acted improperly by
        repeatedly vouching for the credibility of prosecution witness
        Ryan Pollie.

IV.     The prosecution presented testimony by a police witness that
        was untrue, requiring a new trial.

V.      The denial of a brief adjournment to permit defense counsel to
        interview a witness in the local county jail was unreasonable
        and denied Petitioner the due process right to present a
        defense with witnesses.

VI.     Failures to object and other shortcomings amounted to
        ineffective assistance of counsel.

VII.    Petitioner was prejudiced by ineffective assistance of counsel
        on appeal.

Respondent asserts that all of these claims except claim five (denial of an

adjournment) are procedurally defaulted because Petitioner did not raise claims one

through four and six through seven on direct appeal and because the state courts denied

8

*Etherton v. Rivard*, No. 11-11958

relief under Michigan Court Rule 6.508(D)(3).  Rule 6.508(D)(3) prohibits state courts

from granting relief from judgment if a defendant could have raised his claims on appeal

from his judgment or sentence unless the defendant shows cause for his failure to raise

the claim earlier and prejudice from the alleged irregularities.   The rule is an adequate

and independent ground for foreclosing habeas review of a petitioner's claim if the last

state court to adjudicate the petitioner's claims in a reasoned opinion unambiguously

relied on the rule to deny relief.  *Peoples v. Lafler*, 734 F.3d 503, 510-12 (6th Cir. 2013).

Petitioner's claims, however, lack substantive merit, and a determination of whether the

claims are procedurally defaulted under a cause-and-prejudice analysis "adds nothing but

complexity to the case."  *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010).  The

Court therefore "cut[s] to the merits," *id*., using the following standard of review.

## II.  STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for persons

in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and

Effective Death Penalty Act of 1996 (AEDPA)."  *Harrington v. Richter*, __ U.S. __, __,

131 S. Ct. 770, 783 (2011).  Pursuant to § 2254, the court may not grant a state prisoner's

application for the writ of habeas corpus unless the state court's adjudication of the

prisoner's claims on the merits

> (1)  resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or

9

*Etherton v. Rivard*, No. 11-11958

> (2)      resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may
> grant the writ if the state court arrives at a conclusion opposite to that
> reached by [the Supreme] Court on a question of law or if the state court
> decides a case differently than [the Supreme] Court has on a set of
> materially indistinguishable facts.  Under the "unreasonable application"
> clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the
> state court identifies the correct governing legal principle from [the
> Supreme] Court's decisions but unreasonably applies that principle to the
> facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for

Part II).

 "[A] federal habeas court may not issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly.  Rather, that application must

also be unreasonable."  *Id*. at 411.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court

rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court

decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)

(*per curiam*)."  *Renico v. Lett*, 559  U.S. 766, 773 (2010).  "A state court's determination

that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists

could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*,

*Etherton v. Rivard*, No. 11-11958

131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.*  (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).  To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 786-87.

## III.  DISCUSSION

### A.  Hearsay Testimony and the Confrontation Clause

Petitioner alleges that the hearsay testimony of several police officers was prejudicial and deprived him of his constitutional right to confront the witnesses against him.  The hearsay consisted of the officers' testimony that law enforcement officials had received a tip about two white men, possibly carrying cocaine, going to Detroit and returning to Grand Rapids in a white Audi on November 22, 2006.  The tipster did not testify at trial, and Petitioner argues that, because the officers' reason for stopping the car was not something the jury was required to decide, the only purpose in eliciting the testimony was to prejudice him.

Whether the disputed testimony was inadmissible hearsay under the Michigan Rules of Evidence is inconsequential because "federal habeas corpus relief does not lie for errors of state law."  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  "[A] federal court is

11

*Etherton v. Rivard*, No. 11-11958

limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  The federal constitutional issue is whether Petitioner's rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution were violated.

**1.  Clearly Established Federal Law**

The Confrontation Clause is applicable to the States through the Fourteenth Amendment," *Idaho v. Wright*, 497 U.S. 805, 813 (1990), and it guarantees defendants in criminal prosecutions "the right . . . to be confronted with the witnesses against [them]." U.S. CONST. amend. VI.  "The Amendment contemplates that a witness who makes testimonial statements admitted against a defendant will ordinarily be present at trial for cross-examination, and that if the witness is unavailable, his prior testimony will be introduced only if the defendant had a prior opportunity to cross-examine him." *Giles v. California*,  554 U.S. 353, 358 (2008) (citing *Crawford v. Washington*, 541 U.S. 36, 68 (2004)).  In other words, "[t]estimonial statements of witnesses absent from trial [are admissible] only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford*, 541 U.S. at 59.  The Supreme Court has stated that the term "testimonial" "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id*. at 68; *see also Davis v. Washington*, 547 U.S. 813, 822 (2006) (explaining that statements in response to police interrogations are testimonial when the circumstances

*Etherton v. Rivard*, No. 11-11958

objectively indicate that there was no ongoing emergency, and "the primary purpose of

the interrogation is to establish or prove past events potentially relevant to later criminal

prosecution").

Following *Crawford*, the United States Court of Appeals for the Sixth Circuit

defined the proper inquiry as "whether the declarant intends to bear testimony against the

accused." *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004).  This intent "may

be determined by querying whether a reasonable person in the declarant's position would

anticipate his statement being used against the accused in investigating and prosecuting

the crime." *Id.*  Statements of a confidential informant are testimonial because "[t]ips

provided by confidential informants are knowingly and purposely made to authorities,

accuse someone of a crime, and often are used against the accused at trial." *Id.*  Pursuant

to *Cromer*, the tip to law enforcement officials in this case is deemed testimonial.

The Confrontation Clause, however, "does not bar the use of testimonial

statements for purposes other than establishing the truth of the matter asserted."

*Crawford*, 541 U.S. at 59 n.9.  The next question then is whether the disputed hearsay

testimony in this case was offered for the truth of the matter.

Testimony about the tip explained why law enforcement officers conducted drug

interdiction on a particular expressway on the date and time in question and why they

stopped Petitioner.  Out-of-court statements that do not go to the very heart of the

prosecution's case, but merely provide background information as to why the police took

*Etherton v. Rivard*, No. 11-11958

the action they did, are not offered to establish the truth of the matter asserted. *United States v. Deitz*, 577 F.3d 672, 683-84 (6th Cir. 2009). And the Confrontation Clause does not apply to statements that were not offered to establish the truth of the matter asserted. *Cromer*, 389 F.3d at 676.

One could argue, however, that the prosecution was using the officers' hearsay testimony to show more than the reason for the officers' investigation or the effect of the out-of-court statement on the officers. The prosecutor appears to have elicited the testimony, at least in part, to show that someone had implicated Petitioner in the crime. Detective Mercer, for example, testified that the tipster had said two white males, possibly carrying cocaine, would be traveling from Grand Rapids to Detroit and back to Grand Rapids in a white Audi. (Trial Tr., 77, Feb. 15, 2007.) And Sergeant Abendroth testified that the tipster provided very specific information about the vehicle, the gender and race of the occupants, the time frame for the individuals' departure and return, and the route of travel. (*Id.* at 188.) Petitioner and Ryan Pollie apparently fit this description. The Court therefore will assume the hearsay was offered at least in part to prove the truth of the matter asserted: that the tipster had implicated Petitioner and Ryan Pollie, or someone matching their description, in illegal drug activity. And because Petitioner had no opportunity to cross-examine the tipster, his right of confrontation was violated. The remaining question is whether the alleged violation of Petitioner's right of confrontation was harmless error.

14

*Etherton v. Rivard*, No. 11-11958

## 2. Harmless Error Analysis

Violations of the Confrontation Clause are subject to harmless-error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986); *Vasquez v. Jones*, 496 F.3d 564, 574 (6th Cir. 2007). A constitutional error is harmless unless it had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). "When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless. And, the petitioner must win." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). Whether a violation of the Confrontation Clause was harmless error depends on a number of factors, including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Van Arsdall*, 475 U.S. at 684 .

The tipster's statement to the police was not cumulative evidence, but it also was not essential to the prosecution's case. Moreover, there was substantial evidence suggesting that Petitioner was guilty as charged. The police officers' testimony at trial established that Petitioner owned the car he was driving and was seated next to a brick of cocaine when the officers stopped him. He apparently hesitated when Trooper Trevin

15

*Etherton v. Rivard*, No. 11-11958

Antcliff asked him for permission to search the car and said, "I don't know why you'd want to do that." (Trial Tr., 81, Feb. 15, 2007.) A videotape of the traffic stop, which the jurors viewed, apparently also demonstrated that Petitioner initially did not want the police to search his car. (*Id*. at 213-14.) The failure to give consent, alone, is not enough to make the error harmless. And the story he gave to the arresting officers varied from what Ryan Pollie told the officers at the scene. (*Id*. at 112.)

Pollie, moreover, testified that Petitioner had showed him the cocaine in the car on the return trip to Grand Rapids and told him how he acquired it. Pollie's testimony about his own guilty plea and the fact that he thought it was unfair to be charged with possessing the cocaine was strong evidence that Petitioner jointly possessed the cocaine. And testimony from other witnesses that the brick of cocaine was pure cocaine and more than what a mere user would possess was substantial evidence that Petitioner possessed the cocaine with intent to deliver it.

Furthermore, the trial court specifically instructed the jurors that testimony regarding the tip given to law enforcement officials was not evidence and that the testimony was admitted to demonstrate why the police did what they did. The trial court emphasized that the tip was not *per se* evidence of Petitioner's guilt. (*Id*. at 248.)

In light of the trial court's jury instruction and the overall strength of the prosecutor's case apart from the hearsay testimony, the alleged error could not have had a

16

*Etherton v. Rivard*, No. 11-11958

substantial and injurious effect or influence on the jury's verdict and was harmless.

Petitioner therefore has no right to habeas corpus relief on the basis of his first claim.

## B.  The Prosecutor's Closing Argument

Petitioner alleges that the prosecutor acted improperly during closing arguments by (1) stating his reasons for (a) offering a plea bargain to Ryan Pollie and (b) not calling certain witnesses and (2) vouching for Ryan Pollie's credibility.  Petitioner contends that the prosecutor's comments diverted the jury's attention to the prosecution's conduct and were unrelated to anything the jury was required to decide.

### 1.  Clearly Established Federal Law

Although prosecutors "may strike hard blows," they are "not at liberty to strike foul ones.  It is as much [their] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger v. United States*, 295 U.S. 78, 88 (1935).  Nevertheless, "[c]laims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  A reviewing court may grant relief only when the prosecutor infringes on specific provisions of the Bill of Rights or infects the trial with such unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  To prevail on his claim, Petitioner must show that the prosecutor's

17

*Etherton v. Rivard*, No. 11-11958

conduct was so egregious "as to render the entire trial fundamentally unfair." *Cook v.*

*Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979). Federal courts in this Circuit

> apply a "two-part test to determine whether the state court reasonably
> applied the federal standard in holding that prosecutorial misconduct did not
> render [the petitioner's] trial fundamentally unfair." *Irick v. Bell*, 565 F.3d
> 315, 324 (6th Cir. 2009). [Courts] first determine whether the prosecution's
> conduct was improper. *Id.* Second, [courts] determine whether that
> improper conduct was flagrant by considering four factors: "(1) whether the
> evidence against the defendant was strong; (2) whether the conduct of the
> prosecution tended to mislead the jury or prejudice the defendant; (3)
> whether the conduct or remarks were isolated or extensive; and (4) whether
> the remarks were made deliberately or accidentally." *Id.* (internal quotation
> marks omitted).

*Wogenstahl v. Mitchell*, 668 F.3d 307, 328 (6th Cir.), *cert. denied sub nom Wogenstahl v.*

*Robinson*, __ U.S. __, 133 S. Ct. 311 (2012).

## 2. The Prosecutor's Explanations

Petitioner alleges that the prosecutor became a witness and argued facts not in

evidence during closing arguments. Specifically, Petitioner claims that the prosecutor

improperly informed the jury of his reasons for (1) offering a plea bargain to Petitioner's

co-defendant, Ryan Pollie, but not to Petitioner and (2) not calling certain witnesses.

Petitioner contends that the prosecutor's comments were improper because there was no

testimony about the prosecutor's decision-making process.

While it is true that prosecutors must refrain from asserting facts never admitted in

evidence, *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000), the prosecutor

elicited testimony on direct examination of Ryan Pollie that Pollie had pleaded guilty to

18

*Etherton v. Rivard*, No. 11-11958

possessing under twenty-five grams of cocaine pursuant to a deal offered him by the prosecutor's office.  (Trial Tr., 15, Feb. 150, 2007.)  On cross-examination, defense counsel also elicited testimony that Pollie had been charged with the same crime as Petitioner, but had pleaded guilty to a reduced crime and was expecting a lesser sentence.  (*Id*. at 169-70.)  And, on re-direct examination, the prosecutor elicited testimony that he and Pollie's attorney had reached a deal and that Pollie had pleaded guilty even though Pollie did not consider that to be very fair.  (*Id*. at 177-79.)

In his closing argument, the prosecutor stated that, although both Petitioner and Ryan Pollie were both charged with the same crime, the prosecutor's office had the authority "to cut deals with bad guys . . . ."  (*Id*. at 216.)  The prosecutor went on to say that Pollie's attorney worked out a deal for Pollie and that there was nothing wrong with doing that and nothing unusual about offering a deal to one of two co-defendants.  The prosecutor also said that the reason why one defendant got a deal and the other defendant did not, depended on the facts of the case and that, in this case, Pollie was "the first one at the trough" and therefore "eats best."  (*Id*. at 218.)  This argument was proper because it was tied to evidence that had already been introduced.  *Wogenstahl*, 668 F.3d at 331.

As for not calling certain witnesses, the prosecutor stated in his rebuttal argument that he did not call the dog handler and fingerprint analyst as witnesses because it would have been a waste of time to do so.  (Trial Tr., 236-37, Feb. 15, 2007.)  This was a direct

19

*Etherton v. Rivard*, No. 11-11958

response to defense counsel's rhetorical question during closing arguments as to why the prosecution did not call the dog handler or the lab technician.  (*Id*. at 229-30.)

A "prosecutor is ordinarily entitled to wide latitude in rebuttal argument and may fairly respond to arguments made by defense counsel."  *Angel v. Overberg*, 682 F.2d 605, 607-08 (6th Cir. 1982) (citing *DeChristoforo*, 416 U.S. at 637).  The prosecutor's rebuttal argument was a fair response to defense counsel's argument, because witnesses had already testified that the drug-sniffing dog had not detected cocaine during a search of Petitioner's car and that no fingerprints were found on the plastic bag containing the cocaine.

The trial court, moreover, instructed the jurors at the beginning of the case (Trial Tr., 64, Feb. 15, 2007) and at the close of the case (*id*. at 247-48) that the attorneys' statements and arguments were not evidence, but were meant to help the jurors understand the evidence and the way each side viewed the case.  The court cautioned the jurors to base their verdict only on the properly admitted evidence.  A trial court can correct improprieties in a prosecutor's closing argument "by instructing the jury that closing arguments are not evidence."  *United States v. Crosgrove*, 637 F.3d 646, 664 (6th Cir. 2011) (citing *United States v. Emuegbunam*, 268 F.3d 377, 406 (6th Cir. 2001)).  Therefore, even assuming the prosecutor's comments were improper, they were not flagrant and did not render the trial fundamentally unfair.

20

*Etherton v. Rivard*, No. 11-11958

### 3. Vouching

Petitioner claims that the prosecutor vouched for prosecution witness Ryan Pollie when he stated during closing arguments that Pollie "was incredibly frank" with the jurors and "incredibly honest" when describing what happened on November 22, 2006. (Trial Tr., 217, Feb. 15, 2007.)

"A prosecutor should not give his own opinion as to the credibility of [a] witness." *West v. Bell*, 550 F.3d 542, 565 (6th Cir. 2008) (citing *Hodge v. Hurley*, 426 F.3d 368, 378-79 (6th Cir.2005)).  A

> prosecutor's vouching for the credibility of witnesses . . . pose[s] two dangers:  such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

*United States v. Young*, 470 U.S. 1, 18-19 (1985).

The disputed comments in this case were blunt comments about Pollie's honesty. Nevertheless, testimony that the police discovered a brick of cocaine in the pocket of the car door where Petitioner was seated and that Petitioner admitted to owning the car was strong evidence of Petitioner's guilt.  And even though the prosecutor's remarks were deliberately made, they were not extensive.  Further, the trial court instructed the jurors to base their decision only on the admissible evidence and that the attorneys' arguments

*Etherton v. Rivard*, No. 11-11958

were not evidence.  The Court therefore concludes that, although the prosecutor's comments about Pollie being honest and frank were improper, the impropriety was not flagrant.  Petitioner has no right to relief on the basis of the prosecutor's alleged vouching.

## C.  Alleged Perjury

Petitioner alleges next that he is entitled to a new trial because the prosecutor elicited untrue testimony from a police officer.  The allegedly false testimony came from Sergeant Joel Abendroth who testified about fingerprint evidence and the nature of plastic baggies.

The trial court adjudicated and rejected this claim in its opinion denying Petitioner's motion for relief from judgment.  The court stated that, "contrary to defendant's position, countering positions by expert witnesses is not necessarily equivalent to perjury."

### 1.  Clearly Established Federal Law

Perjury is "false testimony [under oath or affirmation] concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory."  *United States v. Dunnigan*, 507 U.S. 87, 94 (1993). Prosecutors, as representatives of the state, may not deceive a court and jurors by eliciting false evidence or by allowing false testimony to go uncorrected when it appears.  *Giglio v. United States*, 405 U.S. 150, 153 (1972); *Napue v. Illinois*, 360 U.S. 264, 269 (1959).

22

*Etherton v. Rivard*, No. 11-11958

"[A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."  *United States v. Agurs,* 427 U.S. 97, 103 (1976) (footnote omitted).  The United States Court of Appeals for the Sixth Circuit has

> fashioned a three-part test for determining whether there was a denial of due process through the use of false testimony:
>
>> In order to establish prosecutorial misconduct or denial of due process, the defendants must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false. The burden is on the defendants to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony.
>
> *Brooks* [*v. Tennessee*, 626 F.3d 878, 894-95 (6th Cir. 2010)] (quoting *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir.1998)).  Testimony is material only if there is a reasonable likelihood that it affected the judgment of the jury.  *Id.* at 895.

*Peoples v. Lafler*, 734 F.3d at 515-16.

## 2.  Application

The disputed testimony in this case was Detective Sergeant Joel Abendroth's testimony that plastic bags are porous and that it is very uncommon to detect fingerprints on plastic bags.  Detective Abendroth stated that he found fingerprints on plastic bags less than five times in over 1600 investigations.  (Trial Tr., 196-97, Feb. 15, 2007.)  After trial, Petitioner obtained an affidavit from Michael J. Sinke, a former latent print analyst for the Michigan State Police.  Mr. Sinke asserts in his affidavit that plastic bags are non-

23

*Etherton v. Rivard*, No. 11-11958

porous and that, during his forensic career, he obtained latent prints from plastic bags

approximately 50% of the time.

Sergeant Abendroth's testimony about plastic bags being porous may have been

incorrect, but he admitted at trial that he was not a fingerprint expert (*id.* at 197), and it is

clear from his testimony that he was merely speaking from his own experience. Thus,

Petitioner has failed to show that Abendroth willfully provided false testimony.

Furthermore, whether plastic bags are porous or not conducive to detecting

fingerprints was not material evidence. Finally, there is no reason to believe that the

prosecutor knew Detective Abendroth's testimony was false. For these reasons,

Petitioner has failed to show that the prosecutor elicited or promoted false testimony.

**D.  The Trial Court's Refusal to Adjourn the Trial**

Petitioner's trial attorney requested an adjournment of the trial at the conclusion of

*voir dire.* The trial court denied the request, and the trial proceeded. Petitioner claims

that the trial court unreasonably and arbitrarily denied his request for a short adjournment

of his trial and thereby deprived him of his right to due process of law and his right to

present a defense. According to Petitioner, if the trial court had adjourned the trial, his

attorney could have interviewed a jail detainee named Dan Clayton who claimed that

Ryan Pollie had stated in jail that the cocaine in question belonged to him and not to

Petitioner. The Michigan Court of Appeals adjudicated this claim on direct appeal and

stated that the trial court properly denied the motion to adjourn.

24

*Etherton v. Rivard*, No. 11-11958

### 1. Clearly Established Federal Law

Denial of a continuance rises to the level of a constitutional violation only when there is "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay'. . . ." *Morris v. Slappy*, 461 U.S. 1, 11–12, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964)); *see Ungar*, 376 U.S. at 591, 84 S.Ct. 841 ("These matters are, of course, arguable, and other judges in other courts might well grant a continuance in these circumstances. But the fact that something is arguable does not make it unconstitutional."). The circumstances of a particular case determine whether the denial of a continuance is so arbitrary as to violate due process. *Ungar*, 376 U.S. at 589, 84 S.Ct. 841 ("There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied."). A defendant must also show that the denial of a continuance actually prejudiced his or her defense. *Powell v. Collins*, 332 F.3d 376, 396 (6th Cir. 2003) ("Actual prejudice may be demonstrated by showing that additional time would have made relevant witnesses available or otherwise benefit[t]ed the defense.").

*Burton v. Renico*, 391 F.3d 764, 772 (6th Cir. 2004).

### 2. Application

Immediately after *voir dire* on the day of trial, defense counsel asked for an adjournment. Although she stated that she and Petitioner did not have an opportunity to prepare for trial to their satisfaction, she said nothing about wanting to interview Dan Clayton or any other witness. The basis for her motion was a desire to file an interlocutory appeal from the trial court's denial of her motion to suppress evidence of the cocaine found in Petitioner's car. Defense counsel also stated that they would like to order a transcript of the motion hearing for potential impeachment purposes, should they

25

*Etherton v. Rivard*, No. 11-11958

be unsuccessful in appealing the denial of the motion to suppress evidence. (Trial Tr., 51-54, Feb. 15, 2007.)

The trial court declined to grant either an adjournment or a stay, noting that the trial date had been set almost two months earlier and that Petitioner was unlikely to prevail on appeal because he was "an experienced defendant" and clearly consented to the search. The court opined that both sides were given a full opportunity to prepare for trial and that both attorneys were competent and experienced attorneys who could ably try the case. The court concluded that there was no basis for adjourning the case. (*Id*. at 54-55.)

Given the fact that defense counsel requested an adjournment to file an interlocutory appeal which had questionable merit and the fact that counsel said nothing about the need to interview witnesses, the trial court's denial of an adjournment was not arbitrary or capricious. The denial of an adjournment certainly did not rise to the level of a denial of due process.

While it is true that defense counsel stated in her oral motion to adjourn the trial that she and Petitioner did not have an opportunity to prepare for trial to their satisfaction, the basis for that statement was the lack of a transcript of the hearing on the motion to suppress evidence. The trial court responded that there were many times when its court reporter or administrator had prepared transcripts on very short notice and that a transcript could have been prepared if it had been requested.

26

*Etherton v. Rivard*, No. 11-11958

While it is also true that defense counsel maintained there would be no prejudice to the State if the trial were adjourned because the witnesses were local and "[o]ne is in lockup" and was "not going anywhere," she did not mention Dan Clayton when making that argument. It appears from the context of her statement that she was referring to co-defendant Ryan Pollie, not Clayton. At no point during the oral motion or during the remainder of the trial did Petitioner or his attorney request a brief adjournment to interview or meet with Clayton.

Petitioner contends that his attorney was unprepared for trial and should have been granted an adjournment because the attorney was told that the trial judge was on vacation and would not be hearing the case on February 15, 2007. The attorney, in fact, testified at the post-conviction evidentiary hearing that the prosecutor and trial judge's staff had informed her the judge would not be present on February 15. She explained that she had set the matter for a conditional plea and subsequently learned that the prosecutor had scheduled the conditional guilty plea proceeding for the day of trial. (Evidentiary Hr'g Tr., 7-8, Oct. 22, 2007.)

Despite these indications that defense counsel had hoped for a conditional plea and stay of the circuit court proceedings, she indicated at the evidentiary hearing that the majority of her trial preparation was done in advance and that she was not planning to call any witnesses on February 15. (*Id*. at 22-23.) She also acknowledged that she had been involved in the case since the previous November, that she knew all the facts and issues,

27

*Etherton v. Rivard*, No. 11-11958

and even though the parties were still exchanging evidence, she typically used the days immediately before trial to prepare her opening statement and to focus on what she was going to do at trial.  (*Id*. at 22-23, 34-35.)

It was not unreasonable for the trial court to conclude at the evidentiary hearing that defense counsel had sufficient time to prepare for trial and actually was prepared for trial even if she was not as well prepared as she had wanted to be.  (*Id*. at 112, 116-19.) And it was not unreasonable for the Michigan Court of Appeals to affirm the trial court on this issue.

Petitioner has failed to show that his constitutional rights to due process and to present a defense were violated by the trial court's refusal to grant an adjournment of the trial.  Therefore, Petitioner has no right to relief on the basis of his fifth claim.

**E.  Trial Counsel**

Petitioner contends that his trial attorney rendered ineffective assistance by not objecting to the prosecutor's closing argument or to the police officers' hearsay testimony about the tip they received.  Petitioner also contends that his attorney was unprepared for trial.

**1.  Clearly Established Federal Law**

The Constitution "does not guarantee the right to perfect counsel; it promises only the right to effective assistance . . . ."  *Burt v. Titlow*, __ U.S. __, __, 134 S. Ct. 10, 18 (2013).  To prevail on his claim, petitioner must show that his attorney's performance was

28

*Etherton v. Rivard*, No. 11-11958

deficient and that the deficient performance prejudiced the defense. *Strickland v.*

*Washington*, 466 U.S. 668, 687 (1984). "Unless a defendant makes both showings, it

cannot be said that the conviction . . . resulted from a breakdown in the adversary process

that renders the result unreliable." *Id.*

> A convicted defendant making a claim of ineffective assistance must
> identify the acts or omissions of counsel that are alleged not to have been
> the result of reasonable professional judgment. The court must then
> determine whether, in light of all the circumstances, the identified acts or
> omissions were outside the wide range of professionally competent
> assistance. In making that determination, the court should keep in mind that
> counsel's function, as elaborated in prevailing professional norms, is to
> make the adversarial testing process work in the particular case. At the
> same time, the court should recognize that counsel is strongly presumed to
> have rendered adequate assistance and made all significant decisions in the
> exercise of reasonable professional judgment.

*Id*. at 690.

An attorney's performance is deficient if "counsel made errors so serious that

counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly

deferential." *Id*. at 689.

> A fair assessment of attorney performance requires that every effort be
> made to eliminate the distorting effects of hindsight, to reconstruct the
> circumstances of counsel's challenged conduct, and to evaluate the conduct
> from counsel's perspective at the time. Because of the difficulties inherent
> in making the evaluation, a court must indulge a strong presumption that
> counsel's conduct falls within the wide range of reasonable professional
> assistance; that is, the defendant must overcome the presumption that, under
> the circumstances, the challenged action "might be considered sound trial
> strategy." See *Michel v. Louisiana*, [350 U.S. 91, 101 (1955)]. There are

29

*Etherton v. Rivard*, No. 11-11958

countless ways to provide effective assistance in any given case.  Even the
best criminal defense attorneys would not defend a particular client in the
same way.

*Id*.

To demonstrate that an attorney's deficient performance prejudiced the defense,

the defendant must show "that counsel's errors were so serious as to deprive the

defendant of a fair trial, a trial whose result is reliable."  *Id*. at 687.  The petitioner must

demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different.  A reasonable probability is a

probability sufficient to undermine confidence in the outcome."  *Id*. at 694.  "This does

not require a showing that counsel's actions 'more likely than not altered the outcome,' "

but "[t]he likelihood of a different result must be substantial, not just conceivable."

*Harrington v. Richter*, 131 S. Ct. at 792 (quoting *Strickland*, 466 U.S. at 693).

### 2. Failure to Object to Hearsay Testimony and the Trial Court's Failure to Make a Ruling

Petitioner alleges that his trial attorney should have objected to the testimony of

Trooper Trevin Antcliff and Deputy Sheriff Adam Mercer regarding the anonymous tip

that law enforcement officials received.  Defense counsel did object when Sergeant Joel

Abendroth subsequently testified about the tip, but Petitioner claims that the failure to

object sooner, when it might have done some good, amounted to ineffective assistance.

30

*Etherton v. Rivard*, No. 11-11958

Petitioner also claims that defense counsel was ineffective for not objecting to the trial

court's failure to rule on defense counsel's objection to Sergeant Abendroth's testimony.

The Court concluded above that testimony about the anonymous tip was harmless.

It follows that defense counsel's failure to object to Trooper Antcliff's and Deputy

Mercer's testimony regarding the anonymous tip did not prejudice Petitioner's defense.

As for defense counsel's failure to object to the lack of a court ruling on counsel's

objection to Sergeant Abendroth's testimony about the tip, a ruling was unnecessary

because the prosecutor agreed to "move on" after defense counsel made her objection.

(Trial Tr., 188, Feb. 15, 2007.)   Defense counsel's failure to object to the lack of a ruling

did not amount to deficient performance.

### 3.  Failure to Object to the Prosecutor's Closing Argument

Petitioner contends that defense counsel should have objected to the prosecutor's

closing argument about why he offered to let Ryan Pollie plead guilty to a lesser offense

and why he did not ask the K-9 officer and fingerprint analyst to testify.   The prosecutor's

comments, however, were not improper.   The prosecutor's reasons for offering a plea

bargain to Ryan Pollie were tied to the evidence, and the prosecutor's comments about

not calling certain witnesses was a direct response to defense counsel's closing argument.

Therefore, defense counsel's failure to object to the comments did not amount to deficient

performance.

31

*Etherton v. Rivard*, No. 11-11958

### 4. Preparation for Trial

Petitioner's final allegation about trial counsel is that she was unprepared for trial. Petitioner contends that the prosecutor and trial court's staff misled his trial attorney about the trial date.  Petitioner also contends that his trial attorney expected the case to conclude with a plea and did not take any steps to prepare for trial.  He claims that trial counsel learned of a defense witness on the morning of trial, and that, if she had more time to prepare, she would have interviewed  Dan Clayton and any other witnesses who knew about Ryan Pollie's jailhouse admissions.  The Michigan Court of Appeals found no merit in Petitioner's claim about trial counsel and concluded that Petitioner had not overcome the presumption of effective assistance of counsel.

#### a.  The Evidentiary Hearing

Defense counsel testified at the evidentiary hearing that the majority of her trial preparation typically is done in advance and that she was not planning to call any witnesses on February 15.  She also acknowledged that she had been involved in the case since the previous November, that she knew all the facts and issues, and even though the parties were still exchanging evidence, she typically used the days immediately before trial to prepare her opening statement and to focus on what she was going to do at trial.

As for Dan Clayton, defense counsel testified that she could not recall everything Petitioner had said about the potential defense witness, but she thought that Petitioner had said someone in lockup may have overheard that Ryan Pollie was lying.  (Evidentiary

*Etherton v. Rivard*, No. 11-11958

Hr'g Tr., 29, Oct. 22, 2007.)  Defense counsel learned about Dan Clayton either during a

conversation with Petitioner on the afternoon before trial or on the morning of trial.  She

thought it more likely than not that she had learned about Clayton on the day of trial,

because (1) she did not consider the witness when planning her trial strategy, (2) she

would have gone to see him in jail before trial if she had known about him, and (3) she

did not mention Clayton by name in her written motion to adjourn the trial.  (*Id.* at 9, 21-

23.)  She claimed that, if the trial court had granted her request for an adjournment on the

day of trial, she would have met with anyone suggested to her by Petitioner.  She also

would have subpoenaed the person as a trial witness because the person would have

buttressed what she thought Pollie was going to say or he would have contradicted

Pollie's testimony and could have been used for impeachment purposes.  (*Id.* at 13.)

Trial counsel nevertheless testified that she had done the majority of her

preparation for trial and the things that she had not been able to do to her satisfaction was

prepare her opening statement and finalize the defense theory.  Part of the problem was

the uncertainty about whether Petitioner would enter a plea.  (*Id.* at 22-23, 33-34.)

Danny Clayton testified at the hearing that he, Petitioner and Ryan Pollie were

housed together at the Ionia County Jail after Petitioner's arrest.  He claimed that Pollie

had said Petitioner should accept responsibility for their arrest because Petitioner was on

parole anyway and the evidence pointed to him.  Pollie also promised to provide

Petitioner with $150.00 a month if Petitioner accepted responsibility for the case.

33

*Etherton v. Rivard*, No. 11-11958

Petitioner allegedly replied, "Why would I do that; it wasn't my dope." (*Id*. at 41-42.)
According to Clayton, eighteen to twenty people out of twenty-four people in their jail
unit knew that Pollie was making admissions and that Pollie testified against Petitioner to
get out of the trouble he was in. (*Id*. at 56-58.)

 Clayton denied receiving any benefit for his testimony, but he admitted that he
probably wrote close to one hundred letters to the prosecutor, the trial court, and other
individuals seeking consideration on his sentence in return for information about drug
dealers in jail. He also admitted to relentlessly seeking consideration for information
about an unrelated murder. (*Id*. at 50-51.)

 Petitioner testified at the hearing that he was housed with Clayton and Pollie in the
Ionia County Jail for about two weeks after his arrest. During that time, Pollie repeatedly
asked him to plead guilty in return for $150.00 a month, because the cocaine was in
Petitioner's car and Petitioner was on parole anyway. (*Id*. at 63.) Petitioner claimed that
he was subsequently sent to another unit and that, during the weekend before his trial, he
learned from a porter in the jail that someone had information for him regarding what
Ryan Pollie had said. The porter did not know the person's name, but during the week of
trial, the porter told him that Ryan Pollie had informed Dan Clayton of some things that
might help Petitioner. Petitioner then called his attorney and informed her on the day
before trial that there was a witness in jail who had some information which was expected
to help him. (*Id*. at 64-68, 73.)

*Etherton v. Rivard*, No. 11-11958

When questioned by the trial court, Petitioner stated that, after Ryan Pollie decided to testify against him, he (Petitioner) had been willing to enter a plea on the condition that he could preserve his right to appeal.  He admitted that his plea would not have been truthful.  In other words, he would have lied to the court.  (*Id*. at 81-82.)

Petitioner's trial attorney was recalled after Petitioner testified.  She testified that she was not prepared as well as she would have liked to have been, but that she knew the facts of the case.  As far as what witnesses would be available and what evidence would be admitted or excluded, she did not know that until shortly before trial because of the uncertainty about what Ryan Pollie would say at trial and whether he would testify for or against Petitioner.  She nevertheless thought that she did a good job and that she had done the best she could with what she had.  (*Id.* at 91-92, 96.)

The trial court denied Petitioner's motion for new trial because it did not believe that Petitioner told his attorney about Dan Clayton or any other witnesses.  The trial court did not think that either Clayton or Petitioner were credible, and the court opined that, even if Clayton had testified, it would not have made a difference in the trial.  The trial court concluded that defense counsel had been prepared and that she preformed competently.  The Michigan Court of  Appeals agreed with the trial court that Petitioner's claim about trial counsel lacked merit.

35

*Etherton v. Rivard*, No. 11-11958

### b. Analysis

The state courts' conclusions about defense counsel being adequately prepared for trial are supported by the record.  Although defense counsel apparently was not as well prepared as she would have liked to have been, she performed adequately.  She made an opening statement, cross-examined each prosecution witness, and argued in favor of a motion for directed verdict of acquittal.

On cross-examination of Ryan Pollie, defense counsel elicited testimony that Pollie had used cocaine in the past and that he had prior convictions for possession of cocaine and for delivery of cocaine.  She also brought out that, even though Pollie was charged with the same crime as Petitioner, he pleaded no contest to a reduced charge and was expecting a lesser sentence.  She also elicited testimony that, when Pollie and Petitioner were stopped on the highway, Pollie failed to tell the police any of the things that he testified about at trial.

During her closing argument, defense counsel pointed out that at least one of the officers who testified at trial had trouble identifying Petitioner.  She also emphasized that no fingerprints were found on the bag of cocaine, and that there was no paraphernalia or other indications in the car that Petitioner was a drug dealer.  She argued that Pollie was an admitted liar and that his testimony was severely compromised by the fact that he was a user and dealer of drugs and had made a bargain for his testimony.  She also claimed

*Etherton v. Rivard*, No. 11-11958

that the prosecution had failed to prove that Petitioner knew the cocaine was in the car and that he had the specific intent to sell it.

As for the failure to interview Dan Clayton, it is unlikely that Clayton's potential testimony about Ryan Pollie being the sole owner of the cocaine in Petitioner's car would have made a difference in the trial. Defense counsel questioned Pollie about whether he had driven the car to Detroit and whether it was his idea to go to Detroit to meet a friend named Dave. As the Michigan Court of Appeals recognized, trial counsel pursued the same theory of defense that Clayton's testimony would have supported, namely, that the drugs found by police belonged to Ryan Pollie, not Petitioner. The Court of Appeals correctly concluded that the jury apparently did not find this line of argument persuasive.

Clayton, moreover, would have been subject to impeachment with his criminal record and many attempts to obtain consideration for his testimony. There is a strong possibility that the prosecutor "would have successfully portrayed Clayton as a willing snitch who was eager to cooperate with law enforcement on others' cases in order to receive more lenient treatment in his future dealings with the Department of Corrections." *Etherton*, Mich. Ct. App. No. 277459, at 4.

The Court concludes that trial counsel was adequately prepared for trial, and there is not a substantial probability that Dan Clayton's testimony would have altered the result of the trial. Thus, the failure to interview and possibly produce Clayton as a defense witness and the alleged failure to prepare more thoroughly for trial did not prejudice

37

*Etherton v. Rivard*, No. 11-11958

Petitioner.  He has no right to habeas relief on the basis of his claim about trial counsel's alleged unpreparedness.


## F.  Appellate Counsel

Petitioner's seventh and final claim alleges that appellate counsel was ineffective for failing to raise all of Petitioner's habeas claims on direct appeal.  The trial court was the only court to issue a reasonable decision on this claim, and it concluded that Petitioner had failed to overcome the presumption that his appellate counsel's decisions constituted sound strategy.

### 1.  Clearly Established Federal Law

An appellate attorney's failure "to raise an issue on appeal can amount to constitutionally ineffective assistance," *Jalowiec v. Bradshaw*, 657 F.3d 293, 321 (6th Cir. 2011), *cert. denied*, __ U.S. __, 133 S. Ct. 107 (2012), but an appellate attorney is not required to raise every non-frivolous issue suggested by the defendant.  *Jones v. Barnes*, 463 U.S. 745, 751 (1983); *Jalowiec*, 657  F.3d at 321.  To demonstrate that appellate counsel was ineffective, Petitioner must show (1) that his attorney unreasonably failed to discover and raise nonfrivolous issues on appeal and (2) a reasonable probability that he would have prevailed on appeal but for his appellate attorney's failure to raise the issues. *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Strickland*, 466 U.S. at 687-91, 694).

*Etherton v. Rivard*, No. 11-11958

## 2. Application

Petitioner asserts that appellate counsel was ineffective for failing to raise on direct appeal habeas claims one, two, three, four, and the portion of claim six that alleges trial counsel was ineffective for failing to make certain objections. Petitioner claims that, although appellate counsel raised meritorious issues about the trial court's denial of an adjournment and trial counsel's failure to prepare for trial, the inclusion of those issues on appeal does not excuse the failure to raise the other issues. Petitioner maintains that he probably would have gotten a reversal if appellate counsel had raised all his claims on direct appeal.

This Court finds that Petitioner's appellate attorney did a commendable job on appeal. She raised questions about the denial of the motion to adjourn the trial, trial counsel's unpreparedness, Dan Clayton's allegations about Ryan Pollie, the trial court's denial of the defense motion to suppress evidence, and the scoring of the state sentencing guidelines. The issues were significant enough to require an eight-and-a-half-page, single-spaced court opinion to resolve them.

Further, for the reasons given in the discussion above, the issues that appellate counsel did not raise on appeal lack merit, and there is not a reasonable probability that Petitioner would have prevailed on appeal had counsel raised the issues. While a different lawyer might have included all of Petitioner's habeas claims in the appeal of right, the decision not to include all of Petitioner's claims was not unreasonable and

39

*Etherton v. Rivard*, No. 11-11958

"affords no basis for [the Court] to conclude that [appellate counsel] was not functioning

as 'counsel' in the Sixth Amendment sense." *McMeans v. Brigano*, 228 F.3d 674, 683

(6th Cir. 2000) (citing *Jones v. Barnes*, 463 U.S. at 750–54). An appellate attorney is not

ineffective for failing to raise a meritless issue. *Shaneburger v. Jones*, 615 F.3d 448, 452

(6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)), *cert.*

*denied*, __ U.S. __, 131 S. Ct. 1013 (2011). The Court therefore declines to grant relief

on Petitioner's claim of ineffective assistance of appellate counsel.

## IV.  CONCLUSION

The state court decisions in this case were not contrary to Supreme Court

precedent, an unreasonable application of Supreme Court precedent, nor an unreasonable

determination of the facts.  The state court decisions certainly were not so lacking in

justification that there was an error beyond any possibility for fairminded disagreement.

Therefore, the petition for a writ of habeas corpus [dkt. #1] is **DENIED**.

## V.  CERTIFICATE OF APPEALABILITY

Petitioner may not appeal this decision unless a district or circuit judge issues a

certificate of appealability.  28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1).  A

certificate of appealability may issue "only if the applicant has made a substantial

showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner

satisfies this standard by demonstrating that jurists of reason could disagree with the

district court's resolution of his constitutional claims or that jurists could conclude the

*Etherton v. Rivard*, No. 11-11958

issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When, as here, "a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484.

Reasonable jurists could debate the Court's assessment of claim one (violation of the Confrontation Clause), claim three (vouching), claim six (ineffective assistance of trial counsel), and claim seven (ineffective assistance of appellate counsel). Therefore, a certificate of appealability may issue on claims one, three, six, and seven. Reasonable jurists would not find debatable or wrong the Court's assessment of claim two regarding the prosecutor's explanations, claim four regarding the presentation of untrue testimony, or claim five regarding the denial of an adjournment. The Court therefore declines to grant a certificate of appealability on claims two, four, and five.

S/Arthur J. Tarnow

Arthur J. Tarnow
Senior United States District Judge

Dated: February 26, 2014

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on February 26, 2014, by electronic and/or ordinary mail.

S/Catherine A. Pickles

Judicial Assistant

41